UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**METALCRAFT OF MAYVILLE, Inc.,**
**d/b/a SCAG POWER EQUIPMENT,**

      Plaintiff,

      -vs-                                             Case No. 16-C-544

**THE TORO COMPANY and**
**EXMARK MANUFACTURING, Inc.,**

      Defendants.

---

## DECISION AND ORDER

Metalcraft of Mayville, Inc., d/b/a Scag Power Equipment, moves for a preliminary injunction precluding The Toro Company and Exmark Manufacturing Co., Inc., from making, using, selling, and offering to sell lawnmowers equipped with platform suspension systems that infringe Scag's patent, U.S. Patent No. 8,186,475. This motion is granted on the condition that Scag posts adequate security. *See* Fed. R. Civ. P. 65(c).

### Background

In 1986, Metalcraft of Mayville purchased Scag, one of the world's largest independent manufacturers of commercial mowing equipment. Metalcraft manufactures Scag mowers in plants located in Mayville and West Bend, Wisconsin.

Operators of riding lawnmowers involved in commercial enterprises, such as landscaping and golf course maintenance, often operate the mowers for extended periods of time, day after day. This can be physically debilitating due to the mowers being driven across uneven terrain.

In 2010, Scag developed a suspended operator platform that greatly improved over existing prior art cushioning systems, many of which focused upon seat suspensions. These seat suspension configurations, however, left the operator susceptible to vibrations, shocks, and forces being transmitted through other components of the lawnmower, such as footrests. In order to better insulate the operator, Scag developed a suspended operator platform, which is disclosed and claimed in the '475 patent. The operator seat is mounted on a suspended operator platform that has the ability to absorb and damp shock impulses. The operator platform is attached via a linkage and shock absorption system to the frame of the lawnmower.

Shortly after developing this technology, Scag commercialized the system disclosed and claimed in the '475 patent, offering the suspended operator platform as a feature in its newly created Cheetah line consisting of lawnmowers with various sizes of cutting decks, i.e., 48", 52", 61", and 72". Scag's website explains that the "entire operator platform (seat and

foot plate) are suspended to deliver a smooth ride, with only three moving parts." Since its introduction in 2010, Scag has sold about 15,000 Cheetah units, generating gross revenue of about $30 million.

Scag sells its lawnmowers, including its Cheetah line, to distributors who in turn sell to dealers. Scag estimates that there are around 1100 dealers in its network. Dealers typically carry products from multiple manufacturers, so it is not uncommon for Scag lawnmowers to compete head-to-head on the dealer floor with competitors' lawnmowers, including Toro and Exmark lawnmowers. All three companies also have significant web presences, including web sites that tout the features and other aspects of their products.

In 2015, both Exmark and Toro introduced a mower with a suspended operator platform to compete with Scag's Cheetah line. Exmark announced a limited launch in a July 1, 2015 press release. Because of customer demand, Exmark subsequently announced in an October 21, 2015 press release that it was expanding the suspended operator platform for 2016 to additional lawnmower models. Exmark touts its suspended platform on the "Recent Innovations" page on its website. A promotional video provides a demonstration of the Exmark suspended platform system.

On November 2, 2015, Toro similarly announced the introduction of

- 3 -

"the all-new MyRIDE™ suspension system available on select Toro® Z-Master® zero-turn mowers." Toro's website also features a promotional video showing a detailed demonstration of the MyRIDE suspension system.

## Analysis

To obtain a preliminary injunction, a party must show that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *See Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "No one factor, taken individually, is necessarily dispositive. … [T]he weakness of the showing regarding one factor may be overborne by the strength of others." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). However, "a movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (emphasis in original). In that respect, there is no longer an "express presumption of irreparable harm upon a finding that a plaintiff [is] likely to succeed on the merits of a patent infringement claim." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659

F.3d 1142, 1148 (Fed. Cir. 2011) (discussing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)).

## I. Likelihood of success

If the accused infringer "raises a substantial question concerning either infringement or validity," then the patentee "has not established that it is likely to succeed on the merits, and a preliminary injunction is not appropriate." *LifeScan Scotland, Ltd. v. Shasta Tech. LLC*, 734 F.3d 1361, 1366 (7th Cir. 2013).

Scag argues that it is likely to succeed in proving infringement of claims 11, 14, and 21. In opposition, the defendants focus on one claim limitation that they assert is missing from all of the asserted claims: that the operator platform supports "an entire body of an operator" during use. All of the accused mowers have steering controls connected to the chassis, not the suspended operator platform, which means that the platform does not support the rider's arms and hands. According to the defendants, Scag chose to use the term "entire body" of the operator to avoid prior art that Scag described as not supporting the entire body of the operator.

Scag counters that attaching the steering controls to the suspended operator platform is merely a preferred embodiment in the specification. "While claim terms are understood in light of the specification, a claim

- 5 -

construction must not import limitations from the specification into the claims." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012). "Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)).

In this case, in the "Summary of the Invention" section, the specification states: "It is also *desired* to provide a suspended operator platform that suspends or isolates at least some controls from the rigid chassis of the ride-on mower. For instance, steering controls *may* be mounted on the suspended platform so as to move in unison with the suspended operator platform." The phrasing does not express the limiting intention required by the law.

Additionally, claims 1, 12, 20, and 26 contain express language directed to the inclusion of steering controls connected to the operator platform. Claim 12, for example, is for the "riding utility vehicle of claim 11, further comprising steering controls for directing movement of the utility vehicle, *the steering controls being connected to and moving in*

*unison with the operator platform.*" This is a *dependent* claim, giving rise to the inference that the limitation in question is not present in claim 11, the *independent* claim. "Under the doctrine of claim differentiation, 'the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.'" *Retractable Tech., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1312 (Fed. Cir. 2011) (Rader, C.J., dissenting in part) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005)). The presumption is "especially strong when the limitation in dispute is the only meaningful difference between an independent claim and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enters. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003).

Accordingly, the Court agrees with Scag that the fact that the defendants' lawnmowers have steering controls attached to the chassis, as opposed to the operator platform, is not a defense to infringement. A person having ordinary skill in the art would understand the "entire body" limitation in reference to how a person sits in an ordinary chair. *Allergan, Inc. v. Apotex Inc.,* 754 F.3d 952, 957 (Fed. Cir. 2014) ("In construing a claim term, we look at the term's plain and ordinary meaning as

- 7 -

Case 2:16-cv-00544-LA   Filed 08/01/16   Page 7 of 13   Document 30

understood by a person of ordinary skill in the art"). Therefore, the defendants failed to raise a substantial question on infringement.

As to validity, defendants argue that certain prior art, U.S. Patent 3,420,568 ("Henriksson"), is an anticipatory reference with respect to claims 11 and 14. A prior art reference is anticipatory under 35 U.S.C. § 102(b) if it "disclose[s] each and every feature of the claimed invention, either explicitly or inherently." *Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*, 471 F.3d 1369, 1375 (Fed. Cir. 2006). Henriksson, however, discloses a heavy-duty truck with a driver's compartment, not an operator platform as described by claims 11 and 14. Henriksson is not an anticipatory reference.

Defendants also argue that claim 21 is obvious in light of Henriksson and an additional patent, JPS5569340 ("Sasaki"), directed to a shock absorber for the rear of a motorcycle. A patent "composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). Defendants offer no reason, and the Court cannot imagine one, that a person of ordinary skill in this field would combine a motorcycle shock with a suspended truck cab and come up with a suspended operator platform. *Id.* at 418-19 ("it can be important to identify a reason that would have prompted a person of ordinary skill in

the relevant field to combine the elements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known").

Defendants have failed to raise a substantial question on infringement or validity. Therefore, Scag is likely to succeed on the merits of its claim for patent infringement.

## II. Irreparable harm

Irreparable harm is harm that no damages payment, however great, could address. Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm. *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). There must be "a nexus between the asserted infringement and the market injury …." *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012). A "mere showing" that Scag "might lose some insubstantial market share as a result of [the] infringement is not enough." *Id.* at 1324-25. Instead, a party "seeking injunctive relief must make 'a clear showing' that it is at risk of irreparable harm, which entails showing 'a likelihood of substantial and immediate irreparable injury.'" *Id.* at 1325

- 9 -

(quoting *Winter Nat.*, 555 U.S. at 22).

It is undisputed that prior to defendants' entry into the market, Scag owned about 100% of the market share for lawnmowers with suspended operator platforms. "Exclusivity is closely related to the fundamental nature of patents as property rights [and] is an intangible asset that is part of a company's reputation, …." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). Therefore, when "two companies are in direct competition against one another, the patentee suffers the harm – often irreparable – of being forced to compete against products that incorporate and infringe its own patented inventions." *Id.* In this context, it is worth noting, as the defendants concede, that customers in the riding lawnmower market are very brand loyal and potential lifetime customers. Indeed, some customers "prefer to purchase an entire line of products from the same manufacturer for consistency, such as common look, common parts, and common warranty." ECF No. 24, Declaration of Christopher Hannan, Toro's Senior Marketing Manager, ¶ 7. Thus, the damage to Scag is irreparable because it is impossible to quantify the damages caused by the loss of a potentially lifelong customer. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) ("Direct competition in the same market is certainly

one factor suggesting strongly the potential for irreparable harm").

Defendants argue that Scag's motion should be denied because it is untimely. However, "a showing of delay does not preclude, as a matter of law, a determination of irreparable harm. A period of delay is but one circumstance that the district court must consider in the context of the totality of the circumstances." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). Scag first saw a lawnmower equipped with Toro's MyRIDE™ suspension system on October 22, 2015, at an industry show. Scag then acquired an infringing mower, investigated its claim, and moved for a preliminary injunction on May 5, 2016. The time lag was reasonable under the circumstances. Scag should not be penalized for doing its due diligence prior to filing suit.

## III. Balance of hardships/public interest

Defendants identify the following hardships they would suffer if enjoined from selling lawnmowers equipped with the infringing platform suspension system: significant loss of sales and expected revenue, potential harm caused by failure to fulfill outstanding orders and/or costs associated with storage and transportation of enjoined products, and other unspecified harms, including reputational damages. In the absence of an injunction, however, Scag would be forced to "compete against its own patented

- 11 -

invention," a situation that "places a substantial hardship" on the patentee. *Robert Bosch*, 659 F.3d at 1156. The Court finds that the latter harm outweighs the former. Indeed, the harms identified by the defendants are those associated with losing a patent infringement lawsuit. At the preliminary stage, Rule 65(c) is designed to provide adequate security in the event that the defendants were wrongfully enjoined.

Finally, the public interest favors the issuance of an injunction. The Federal Circuit has "long acknowledged the importance of the patent system in encouraging innovation." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006). That incentive "would be adversely affected by taking market benefits away from the patentee and giving them to the accused infringer …." *Celsis*, 664 F.3d at 932. The public can continue obtaining the patented suspension system from Scag, or it can obtain other non-infringing mowers from the defendants.

**\*\*\***

Based on the foregoing, the Court orders that Scag's motion for a preliminary injunction [ECF No. 2] is **GRANTED**, subject to the posting of adequate security under Rule 65(c).

Dated at Milwaukee, Wisconsin, this  **1st**  day of August, 2016.

                                             **BY THE COURT:**

                                        _____
                                        **HON. RUDOLPH T. RANDA**
                                        **U.S. District Judge**

- 13 -

Case 2:16-cv-00544-LA   Filed 08/01/16   Page 13 of 13   Document 30